#### UNITED STATES DISTRICT COURT
#### WESTERN DISTRICT OF KENTUCKY
#### AT LOUISVILLE

UNITED STATES OF AMERICA                                                         PLAINTIFF

V.                                                                    CASE NO. 3:12-CR-76-S

JESSIE SHARTZER                                                                 DEFENDANT

### FINDING OF FACT, CONCLUSONS OF LAW AND RECOMMENDATION

Jessie Shartzer has filed a motion to suppress evidence seized during a search of his home on February 13, 2011 (*see* docket no. 19).  He alleges that the affidavit tendered in support of the warrant failed to establish probable cause for the search.  Having considered the arguments of counsel presented in their pleadings, reviewed the affidavit, and being otherwise sufficiently advised, the magistrate judge recommends that the district court deny the motion.

### FACTUAL BACKGROUND

1) On February 3, 2011, agents of the Federal Bureau of Alcohol, Tobacco and Firearms (the "BATF") obtained and executed a federal warrant to search Mr. Shartzer's home.[1]  During the search, the agents seized sixteen firearms and a significant amount of ammunition, which Mr. Shartzer, a convicted felon, is not permitted to possess.[2]

2) Mr. Shartzer asserts there existed no probable cause for the issuance of the warrant, because the supporting affidavit was based on information that was stale and also was from an insufficiently reliable source.[3]

---

[1] *See* Application and Affidavit for Search Warrant, Exh. 1 to Govt.'s Resp. to Pl.'s Mot. to Suppress Tangible Evidence (docket no. 26-1).
[2] Govt's Resp. to Pl's Mot. to Suppress Tangible Evidence, p. 1 (docket no. 26).
[3] Pl's Mot. to Suppress Tangible Evidence (docket no. 19).

3) Reduced to its central elements, the warrant states that in May 2010 the BATF began an investigation regarding a cache of stolen firearms.[4] In January 2011, an internet based pawn shop record system often used by the police indicated that one of the stolen firearms had been pawned by a man named Joseph Sanders at a pawn shop in Elizabethtown.[5] Agents from the BATF visited the pawn shop and its owner provided documentation that the gun had in fact been pawned by Mr. Sanders.[6] On February 2, 2011, just one day before the warrant was issued and executed, a BATF agent and a local police detective interviewed Mr. Sanders, who stated that he had obtained the gun from Mr. Shartzer by means of a trade.[7] At that time, Mr. Shartzer was convicted felon, who had been sentenced in 2003 for felony violations of federal firearms laws.[8]

4) Mr. Sanders informed the officers that he had known Mr. Shartzer for thirty years, that he had always lived in the same home (which Mr. Sanders described to the agents in great detail), that he had traded firearms with Mr. Shartzer on seven or eight occasions, and that, as long as he had known him, Mr. Shartzer always kept weapons at his home for business and personal use.[9] Mr. Sanders said that, on November 16, 2011 (almost three months before the warrant issued), he traded three firearms with Mr. Shartzer to obtain the stolen weapon, and provided detailed information about the types and serial numbers of the traded weapons.[10] Based on that information, the BATF determined that the traded weapons were considered firearms under federal law.[11] The agent who submitted the affidavit noted that, in his twenty years of specialized experience investigating firearms-related crimes for the BATF, persons who

---

[4] Aff. In in Support of Application for Issuance of a Search Warrant at p.1, ¶1 (docket no. 26-1)(hereinafter "Aff. at __")
[5] Aff. at p. 1, ¶ 4.
[6] Aff. at p. 2, ¶ 5.
[7] Aff. at p. 2, ¶6, 8.
[8] Aff. at p. 1, ¶2.
[9] Aff. at p. 2, ¶ 7, 8, 10.
[10] Aff. at p. 2, ¶ 6.
[11] Aff. at p. 3,

unlawfully trade or sell firearms typically keep records of their deals at their homes and also store there the weapons to be traded and firearms for personal use.[12]

5) If the preceding information is accurate and reliable, then it clearly establishes that Mr. Shartzer was a felon not permitted to be in possession of firearms and that, as recently as three months ago, he traded in his home a stolen rifle for three specifically-identified weapons provided by Mr. Sanders, who had known Mr. Shartzer for decades and had first seen the stolen rifle in Mr. Shartzer's home seven months prior. Mr. Shartzer alleges that the information in the warrant was stale and inappropriately based on the statements of an informant who may have knowingly pawned a stolen gun and, at the least, was a person with whom the BATF had no prior experience, or any other reasonable basis for assessing his reliability.[13] Accordingly, he asserts that the affidavit should be evaluated with information provided by Mr. Sanders excised.

## CONCLUSIONS OF LAW

1) As our federal courts have noted time and time again, it is a basic principle of the Fourth Amendment that for a search warrant to issue there must be probable cause to believe that, given all the circumstances set forth in the affidavit in support of the warrant, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Laughton,* 409 F.3d 744, 747 (6th Cir. 2005). In other words, there must be established a nexus between the place to be searched and the evidence sought. *Id.* Whether that nexus, and thus probable cause, exists must be determined by examining only what is within the four corners of the affidavit and nothing else. *Id.* at 751.

2) "In evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir.

---

[12] Aff. at p. 3, ¶ 17.
[13] Pl.'s Mot. to Suppress Tangible Evidence (docket no. 19).

2003).  In doing so, however, the court must consider the "totality of the circumstances," including the informant's "veracity, reliability, and basis of knowledge," in order to answer "the commonsense, practical question" of whether the affidavit establishes probable cause to search someone's home. *Illinois v. Gates,* 462 U.S. 213, 230 (1983) (quotation marks omitted). The Sixth Circuit has declared that an affidavit is sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, [such that] a neutral and detached magistrate *may* believe that evidence of a crime will be found." *United States v. Allen,* 211 F.3d 970, 976 (6th Cir. 2000)(en banc)(emphasis in original).

    3)  The magistrate judge concludes that in this case there existed ample information in the affidavit to support a determination of probable cause by the issuing magistrate judge.  Not only was the informant named, but his birthday, social security number and address were included. [14] Attached to the affidavit was a photograph of the stolen weapon Mr. Sanders obtained from Mr. Shartzer,[15] and included in the affidavit was detailed information about the make, model, description and serial numbers of the weapons Mr. Sanders traded with Mr. Shartzer.[16]  And, the affidavit states that Mr. Sanders "described, in great detail, directions to SHARTZER's residence, which, when SA VOLK followed said instructions" led him to a residence independently indentified as one belonging to Jesse Shartzer.[17]  The magistrate judge accordingly concludes that it was appropriate for the magistrate judge who issued the warrant to consider reliable the information provided by Mr. Sanders. *See United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005)("The additional evidence substantiating an informant's reliability need

---

[14] Aff. at p. 2, ¶ 5.
[15] Aff. at Exh. A, p. 3.
[16] Aff. at p. 2, ¶ 8.
[17] Aff. at p. 2, ¶ 7, 12, 13.

not be obtained from a source unrelated to the confidential informant—e.g., an independent police investigation or a second confidential informant—but may be any set of facts that support the accuracy of the information supplied by the informant.")

 4) The remaining question, however, is whether Mr. Sanders information was inappropriately stale.

> The function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate. Rather, the question of staleness depends on the inherent nature of the crime. Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)(internal citations omitted).

 5) Here the information about one specific firearms transaction in Mr. Shartzer's home was almost three months old, but Mr. Sanders had known Mr. Shartzer for thirty years, never knew him to be without firearms for both business and personal use in his home, and had traded weapons with him at least seven or eight times.[18] Firearms are not perishable, although they are easily transferable, but his home was a consistent base of operations for Mr. Shartzer's firearms dealings, not a forum of convenience. The BATF obtained and executed the warrant only one day after meeting with Mr. Sanders, and had no reason to believe that Mr. Shartzer would have removed the firearms from his home or abandoned his residence. Consequently, the magistrate judge concludes that Mr. Sanders' information was not stale.

---

[18] Aff. at p. 2, ¶ 6, 8.

## **RECOMMENDATION**

Because the information contained in the affidavit adequately supports the determination that evidence of a firearms-related crime would be found in Mr. Shartzer's home, and because there is no basis for evaluating the affidavit with any of the information excised because it was stale or unreliable, the issuance of the warrant was constitutionally valid.  The magistrate judge therefore recommends that the district court deny Mr. Shartzer's motion to suppress evidence found in his home on February 3, 2011.

**DATE:**


Copies to:  counsel of record

## **NOTICE**

Within fourteen (14) days after being served a copy of these proposed findings of fact, conclusions of law, and recommendation, any party who wishes to object must file and serve written objections, or further appeal is waived.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).